## KENT ET AL. V. ABEEL.

GENERAL VERDICT — FAILURE OF PROOF.— Where plaintiff sues on two causes of action, but produces no evidence to support the second, a general verdict for the gross amount sued for cannot be sustained.

*Appeal from District Court of Clear Creek County.*

Messrs. RICHARDS & BUTLER, for appellants.

Mr. A. K. WHITE, for appellee.

RICHMOND, C.  This is an action originally commenced in the county court of Clear Creek county, wherein the plaintiff brought suit against the defendants, E. A. Kent, B. H. Culver, H. C. Stuchfield, Joseph Clements and John Quinn, as joint contractors, and alleges for a first cause of action that in August, 1883, he was employed by the defendants at an agreed price of $300 per month

for work and labor to be performed in opening and developing mines; that under said contract he worked from the 1st of August until the 3d day of October, inclusive, 1883, and was paid on this contract the sum of $400, and demands judgment for $220, with interest thereon from October 1, 1883. For a second cause of action he alleges that he was employed by the defendants to sink a shaft on a mine that defendants were prospecting, at an agreed price of $10 per foot; that he sunk said shaft to a depth of six feet, for which he claims judgment for the sum of $60, with interest thereon from November 1, 1883.

Clements and Quinn unite in an answer denying any liability. Kent and Stuchfield unite in an answer denying any liability. The cause was tried in the county court and judgment rendered. Kent and Stuchfield appealed to the district court. The record does not disclose what disposition was made as to Clements and Culver and Quinn in the county court, but we assume that it was disposed of as to them in some manner.

In the trial of the cause in the district court the plaintiff, in support of his position, testifies that he made the contract with Culver, Clements being present; that Culver represented himself to be of the firm of Kent, Culver & Stuchfield, and that subsequently he received letters headed "Kent, Culver & Stuchfield;" and that Culver represented to him that Kent, Culver, Stuchfield and Clements was the company who were interested in the mine, and for whom the work was to be done; that he met Culver at the store of Kent & Stuchfield, who introduced him as the man who is coming over to work on our placer; that he asked Culver in regard to the pay, and Culver said the assessment has all been paid and money raised, and the money deposited in the bank to be paid; that after he had quit work he asked Kent and Stuchfield for some money, and they stated that they did not have the money, and could not pay at that time; that he went to Clements, and he gave him $100; that

subsequently he went to the store of Kent & Stuchfield and got some goods; does not state to whom the goods were charged.

In support of the second cause of action he states that Clements and Culver, finding the result of their labors thus far were not satisfactory, proposed sinking a shaft, and employed him for this purpose. This contract was evidenced by a writing, not offered at the trial. Owing to its loss, it was stipulated by the attorneys for both parties that it was a memorandum of agreement signed by Jacob Abeel of the first part and B. H. Culver, Joseph Clements and John Quinn of the second part, wherein it was agreed by the parties thereto that Mr. Jacob Abeel was to sink a shaft on the placer claim, where he had for some time been working, at an agreed price mentioned therein, to wit, $10 per foot.

Clements testifies for plaintiff that Kent and Stuchfield were interested in the mine, and that he had a conversation with them concerning the contract with Abeel, and that the conversation, in substance, was in regard to Abeel's wages. That he thought $300 per month was a little too much. They claimed he was a man of experience; after prospecting the mine he would know if it would pay or not, and, being an experienced miner, "I thought he could make the mine pay where another would not, so we finally decided to hire him;" that he went to Kent and Stuchfield in regard to paying the balance to Abeel. They said they were a little short, and could not spare the money; they wished Clements to advance him the money; they would pay the balance after a while; that they thought Mr. Culver had made arrangements in regard to paying; and that Abeel got a bill of groceries from Kent & Co.

On cross-examination he admitted that the goods were sent upon his order, and paid for by him; denied that he and Culver were to pay Abeel for the labor, and that the agreement was they were to work the mine together,

and subsequently pay Mr. Leonhardy as much money as they paid for the development work; that he and Culver bought other goods, and sent them up; and that he considered Kent and Stuchfield jointly liable; and yet he paid for all the goods.

John Quinn, for plaintiff, testified that he became a partner in the mine the latter part of August, where and when he had a conversation with Kent, in which Kent said: "We have got a very good thing here. I showed him the depth of the bed-rock, and he said: 'This is a big thing. We will have to put our hands in our pockets this month and pay, but next month it will pay itself.'"

The deposition of George Fisher, for plaintiff, was read, in which he states: "I had a conversation with all the defendants about working the placer claim." That his first conversation was with Kent, and that Kent stated that Mr. Abeel was foreman or superintendent, and Quinn and Clements had sunk a shaft twenty or more feet deep, but as yet had not found bed-rock. "He wanted to sell me a one-fourth interest." That about that time he had a conversation with Kent, Culver and Clements with reference to the property. Stuchfield was also present. That in the month of November, 1883, he had another conversation, and that Kent and Stuchfield and Culver represented that they had a contract for a one-half interest in the said placer mine, and that Clements and Quinn were partners with them, owning one-half of the one-half of their interest. They wished me to buy Quinn's interest.

For the defense Kent and Stuchfield both testified that they never made a contract with Mr. Abeel for development work or anything of that sort; that they had a conditional interest in the mining claim; that Culver ceased to be a partner in the firm of Kent, Culver & Stuchfield in September, 1882; that he clerked for them for one year after that; that Abeel never called upon

them for any money; and that no such conversation as Clements had testified to had ever occurred; that if the venture had paid, and considerable money had been taken out, they would have had a portion of it, on condition that they paid something to Mr. Leonhardy; that all the goods sent to Abeel were charged either to Culver, Clements or Abeel; that, if the mine paid, they were to pay Mr. Leonhardy and get an interest, but not otherwise; they were to pay Mr. Leonhardy the same amount that it would cost to develop it,— then have an interest; that they entered into a contract to purchase the property.

Mr. Leonhardy testified that he was the owner of the mine, and that Kent and Stuchfield were to purchase an undivided one-fourth interest in the claim, and were to pay him a sum of money equal in amount to the money expended by Clements in development work on the claim; that he received money from Clements to pay Abeel, and that he positively knows that all of the money put up to advance the work was put up by Clements; that Kent and Stuchfield and Culver first bonded the property. Under a subsequent arrangement Clements was taken in, and then Clements made some arrangement with Quinn, whereby he was to receive part of Clements' interest. He does not testify to any positive knowledge of the understanding between the defendants, but says in a general way that he thought Clements and Culver were to do the development work.

Culver, in his deposition, which was read on the part of defendants, testified that he made the contract with Abeel, and that Clements and himself were present; that the agreement was verbal; that he was not acting for Kent nor Stuchfield, but that they had a conditional interest; that Clements and himself were to go ahead and develop the placer claim for sixty days; at the end of that time, if the claim would warrant them, buy it. Then, in that case, Kent and Stuchfield were to pay

Leonhardy, the owner of the said placer claim, the amount in money that had been expended in the sixty days' development work, and Mr. Leonhardy was to convey by a deed a one-fourth interest in said claim to Clements and Quinn, and a one-fourth interest to Kent and Stuchfield and Culver. States that he was not a partner of Kent and Stuchfield in prospecting the said claim, and states that to the best of his knowledge Abeel knew of the understanding between himself, Kent and Stuchfield.

A general verdict was rendered against appellants for the sum of $300. Motion for a new trial overruled; judgment entered; exceptions saved; appeal prayed to this court.

It must be admitted that there is testimony tending to show liability on the part of appellants to the first cause of action. Therefore, under the rule established by this court, we might not be justified in reversing the judgment, were it not for the fact that the verdict in this cause was general and for the gross amount claimed in both causes of action. Whatever view we might take under the evidence as to the propriety of joining the two causes of action, had that question been presented, it is sufficient for the purpose of this case to' say that there is not a particle of testimony tending to establish any liability upon the part of appellants under the contract made for sinking the shaft. On the contrary, it is clearly shown by the testimony of the plaintiff and defendants; and by the written agreement offered in evidence, that the only parties interested in that agreement were Abeel as party of the first part, and Clements, Culver and Quinn, parties of the second part. The rule of law is well established that where there is no evidence at all to support the verdict the court will interfere to relieve the party prejudiced by such finding by granting a new trial. The evidence did not warrant the verdict against the appellants upon the second cause of action, and for that rea-

son the judgment should be reversed.    *Carothers v. Jones*, 1 Colo. 196; *Barron v. Frink*, 30 Cal. 486.

It is not necessary to discuss the other assignments of error.    Judgment reversed.

PATTISON and REED, CC., concur.

PER CURIAM.    For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*